# 24-537-cv

## United States Court of Appeals

*for the*

## Second Circuit

NEVILLE, RODIE AND SHAW, INC.,

*Plaintiff-Appellee,*

— v. —

E.A. PRESCOTT LEGARD, as Executor of the
Estate of EDWIN F. LEGARD, JR.,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

## BRIEF FOR DEFENDANT-APPELLANT

CHARLES E. DORKEY III
DENTONS US LLP
*Attorneys for Defendant-Appellant*
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

CP COUNSEL PRESS · (800) 4-APPEAL • (330715)

## **<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ........................................................... 1

ISSUES PRESENTED ...................................................................... 3

STATEMENT OF THE CASE ............................................................ 4

SUMMARY OF ARGUMENT ............................................................ 8

STANDARD OF REVIEW ................................................................. 9

ARGUMENT ................................................................................... 10

   I.   LEGAL STANDARD ................................................................ 10

   II.    DEFENDANT-APPELLANT WAS ENTITLED TO REFUSE TO SELL DECEDENT'S COMMON SHARES TO THE CORPORATION ..................... 11

CONCLUSION ................................................................................ 16

CERTIFICATE OF COMPLIANCE ..................................................... 17

# TABLE OF AUTHORITIES

## CASES

*2138747 Ontario, Inc. v. Samsung C & T Corp.*,
   31 N.Y.3d 372, 103 N.E.3d 774 (2018) .............................................11

*32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co.*,
   935 F.3d 93 (2d Cir. 2019) ...................................................................9

*A. Cappione Inc. v. Cappione*,
   119 A.D.3d 1121, 990 N.Y.S.2d 297 (3d Dep't. 2014)..............12, 13

*Bethlehem Steel Co. v. Turner Constr. Co.*,
   2 N.Y.2d 456 (1957) ...........................................................................11

*Donohue v. Cuomo*,
   38 N.Y.3d 1, 184 N.E.3d 860 (2022) ............................................10, 11

*Gallagher v. Lambert*,
   549 N.E.2d 136 (1989) .......................................................................13

*Greenfield v. Philles Records, Inc.*,
   98 N.Y.2d 562, 780 N.E.2d 166 (2002) ............................................10

*Matthews v. Roe*,
   193 A.D.3d 919, 147 N.Y.S.3d 597 (2d Dep't 2021)........................10

*Moore v. Kopel*,
   237 A.D.2d 124 (1st Dep't 1997) .......................................................11

*Morlee Sales Corp. v. Mfrs. Trust Co.*,
   9 N.Y.2d 16, 172 N.E.2d 280 (1961) .................................................11

*Phillips v. Audio Active Ltd.*,
   494 F.3d 378 (2d Cir. 2007) .................................................................9

*Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*,
   60 A.D.3d 61, 869 N.Y.S.2d 511 (1st Dep't 2008), aff'd, 13 N.Y.3d 398, 920
   N.E.2d 359 (2009) .........................................................................10, 11

*Slamow v. Del Col*,
   79 N.Y.2d 1016, 594 N.E.2d 918 (1992) ........................................................10

*Slatt v. Slatt*,
   64 N.Y.2d 966, 477 N.E.2d 1099 (1985) ........................................................10

*Teichman by Teichman v. Community Hosp. of W. Suffolk*,
   87 N.Y.2d 514, 663 N.E.2d 628 (1996) ........................................................11

*W.W.W. Assocs. v. Giancontieri*,
   77 N.Y.2d 157, 566 N.E.2d 639 (1990) ........................................................10

**OTHER AUTHORITIES**

Douglas A. Kahn, *Mandatory Buy-Out Agreements for Stock of Closely-Held Corporations*, 68 MICH. L. REV. 1 (1969) ......................................................12

## **PRELIMINARY STATEMENT**

E.A. Prescott Legard, ("Defendant-Appellant" or "Executor") as executor of the estate of Edwin F. Legard, Jr. ("Decedent"), respectfully submits this brief in support of its appeal of the Order of the District Court for the District of Connecticut, dated February 16, 2024, granting Plaintiff-Appellee Neville, Rodie, and Shaw, Inc.'s ("Plaintiff-Appellee," "NRS," or the "Corporation") motion for judgment on the pleadings and denying Defendant-Appellant's cross-motion for judgment on the pleadings.

NRS filed this action seeking specific performance of Sections 2 and 2A of the Shareholders' Agreement, restated as of December 22, 2003 (A-28, Shareholders' Agreement)[1] (the "Agreement") among the shareholders of common stock of the Corporation. Plaintiff-Appellee claimed that inherent in these provisions affording the Corporation a right to purchase the Decedent's shares of common stock at book value was the estate's duty to sell. However, the Agreement is clear that the estate is under no such obligation.

Section 2A of the Agreement expresses the parties' intent that in certain circumstances a decedent's estate has a right to sell the decedent's shares on the open market.

---

[1] Pursuant to the Appendix Method, references to "A-__" are to pages of the appendix filed herewith.

1

> If a deceased shareholder's shares are not purchased by the Corporation (or the other Shareholders) within one year from the date of death, the legal representative and/or beneficiaries or heirs shall have the right to sell such shares, but the Corporation's obligation to purchase such shares shall continue in effect until such shares are sold, at which time its obligation shall expire without liability of any kind to the Corporation.

This provision is implicated in two possible scenarios. The first scenario is where the Corporation chooses not to purchase a decedent's shares. The second scenario is where an estate refuses to sell a decedent's shares back to the Corporation. The District Court erred by limiting Section 2A only to the first scenario – where the Corporation itself chooses not to purchase the shares. No such rationale for this limitation can be found in the Agreement. Section 2A should apply regardless of the reason why the shares were not purchased by the Corporation.

The District Court thus erred as a matter of law in determining that the Executor was required to sell its NRS shares back to the Corporation for Book Value.

## <u>ISSUES PRESENTED</u>

I.      Whether the District Court erred in interpreting the Agreement to mean that NRS, Plaintiff-Appellee, is entitled to enforce its attempt to purchase Decedent's shares and ordering specific performance, directing the Executor, Defendant-Appellant, to sell the Decedent's shares to NRS at book value.

II.      Whether the District Court erred by failing to hold that the Executor, Defendant-Appellant, is under no obligation to sell the Decedent's shares of common stock to NRS, Plaintiff-Appellee, for book value.

Both questions should be answered in the affirmative.

## STATEMENT OF THE CASE

In June 2002, the Decedent purchased ten shares of NRS common stock for $85,500.00, the Book Value of said shares, represented by Certificate #49. (A-18, Statement of Undisputed Facts, ¶ 2). In March 2009, Decedent received ten additional shares of NRS common stock, represented by Certificate #58 (together with Certificate #49, the "Certificates"). (*Id*. at ¶ 3). In December 2003, the Decedent, along with the other owners of the common stock of NRS, entered into the Agreement. (*Id*. at ¶ 5; A-28, Agreement).

There are no recitals in the Agreement setting forth the intent of the parties. Rather, that intent must be gleaned from the words actually used in the Agreement.

Section 2 of the Agreement provides, in pertinent part, that "the provisions of this Agreement shall govern . . . the ownership by his estate of shares of stock in the event of his death." (A-28, Agreement, Section 2). Section 2(A) of the Agreement, entitled "Purchase of Shareholder's Shares Upon Death of Shareholder," imposes an "obligation to purchase all of the decedent's shares as soon thereafter as is practicable" on the Corporation. (*Id*. at Section 2(A)).

Section 2(A) also provides that "[t]he purchase price shall be the Book Value of the shares as of the end of the fiscal year completed prior to the date of the shareholder's death after the audit for such year has been finalized." (*Id*.). The Book Value, as defined in the Agreement, is "per share . . . the book value determined in

4

accordance with generally accepted accounting principles from the books of the Corporation by its independent certified public accountants regularly retained by the Corporation …." (*Id*. at Section 2). The Agreement also indicates that the "[n]o Shareholder (or legal representative) . . . shall be permitted to continue to own or to assign, sell or pledge his shares of Common Stock unless . . . the Corporation or other Shareholders fail to purchase such shares of Common Stock pursuant to this Agreement." (*Id*.).

Section 2(A) then provides that "[i]f the deceased shareholder's shares are not purchased by the Corporation (or other Shareholders) within one year from the date of death, the legal representative and/or beneficiaries or heirs shall have the right to sell such shares, but the Corporation's obligation shall expire without liability of any kind to the Corporation." (*Id*. at Section 2(A)).

Finally, the last sentence of Section 2(A) expressly contemplates the existence of non-employee shareholders, stating "[t]he person or persons to whom such shares are assigned, sold or pledged shall execute an instrument substantially in the form of Exhibit A hereto . . . ." (*Id*.).

The Decedent died on September 23, 2022. (A-18, Statement of Undisputed Facts, ¶ 1). Following the Decedent's death, the Connecticut Probate Court issued a decree appointing Defendant-Appellant as the Executor of the Decedent's Estate. (A-6, Compl., ¶ 5; A-13, Answer, ¶ 5). Shortly thereafter, the Corporation offered

to pay the Book Value of the shares at the end of the fiscal year ending in 2021 corresponding to $304,081.20. (A-6, Compl., ¶ 22; A-13, Answer, ¶ 22). Defendant-Appellant refused to sell the shares to the Corporation for Book Value as permitted by the Agreement. (A-13, Answer, ¶ 30).

On February 28, 2023, Plaintiff-Appellee commenced this action seeking specific performance of the Agreement alleging that the Defendant-Appellant failed to tender and sell the Decedent's Shares back to the Corporation for Book Value in violation of the Agreement. (*See generally* A-6, Compl).

On June 14, 2023, NRS filed a Motion for Judgment on the Pleadings, requesting the District Court enter an order awarding specific performance of the Agreement in its favor and requiring the Executor to tender the Certificates and to sell the Decedent's shares to the Corporation at Book Value of $304,081.20. (A-24, A-26, and A-28).

On July 14, 2023, the Executor filed a Cross-Motion for Judgment on the Pleadings, requesting the District Court hold that it was under no obligation to sell the Decedent's shares of common stock to the Corporation for Book Value; that the Executor continues to own the Decedent's shares of common stock; and that the Executor may sell the shares of common stock to third parties. (A-39).

The District Court, by Order dated February 16, 2024, granted the motion of NRS, Plaintiff-Appellee, and denied the motion of the Executor, Defendant-Appellant. (A-42, p. 16).

## <u>SUMMARY OF ARGUMENT</u>

The District Court determined – and both parties agree – that the Agreement is an unambiguous contract.[2]  The terms of the Agreement demonstrate that NRS has an obligation to buy the Decedent's shares for the Book Value, but also demonstrate that the Estate is under no obligation to sell them to NRS.  Therefore, the Agreement is only susceptible to one meaning, namely that NRS has an obligation to attempt to purchase the Decedent's shares, but the Decedent is under no obligation to sell them.

If Decedent's Estate refuses NRS's offer, then it may retain ownership of these shares or sell them to a third party.  NRS's interpretation of the Agreement imposes additional restrictions and duties on the parties that were not expressed in the Agreement.  Affirming the District Court's holding would read out an entire provision of the Agreement.

---

[2] The District Court also determined that specific performance is an appropriate remedy in the event that NRS prevails.  That holding is not at issue on this appeal and, if the February 16, 2024 Order is affirmed, is unopposed by Defendant-Appellant.

## <u>STANDARD OF REVIEW</u>

A lower court's interpretation of a contract is reviewed *de novo* on appeal.

*See 32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co*., 935 F.3d 93, 98 (2d Cir. 2019); *Phillips v. Audio Active Ltd*., 494 F.3d 378, 384 (2d Cir. 2007).

## **ARGUMENT**

### I.   **LEGAL STANDARD**

The fundamental rule of contract interpretation is that agreements are construed in accord with the parties' intent, and the best evidence of what parties to a written agreement intend is what they say in their writing.  *See Slatt v. Slatt*, 64 N.Y.2d 966, 967, 477 N.E.2d 1099 (1985); *Slamow v. Del Col*, 79 N.Y.2d 1016, 1018, 594 N.E.2d 918, 919 (1992); *Riverside S. Plan. Corp. v. CRP/Extell Riverside, L.P.*, 60 A.D.3d 61, 66, 869 N.Y.S.2d 511 (1st Dep't 2008), aff'd, 13 N.Y.3d 398, 920 N.E.2d 359 (2009); *see also Matthews v. Roe*, 193 A.D.3d 919, 920, 147 N.Y.S.3d 597, 599 (2d Dep't 2021).  Thus, a written agreement that is clear and unambiguous on its face must be enforced according to the plain meaning of its terms, and extrinsic evidence of the parties' intent may not be admitted.  *See W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162, 566 N.E.2d 639, 642 (1990); *Riverside S. Plan. Corp.* 60 A.D.3d at 66, 869 N.Y.S.2d at 511.

A contract is unambiguous if "the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself and concerning which there is no reasonable basis for a difference of opinion." *Donohue v. Cuomo*, 38 N.Y.3d 1, 13, 184 N.E.3d 860, 867 (2022).  Basically, the contract is unambiguous if "on its face [it] is reasonably susceptible of only one meaning." *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 570, 780 N.E.2d 166,

170–171 (2002); *Riverside S. Plan. Corp,* 60 A.D.3d at 66, 869 N.Y.S.2d at 511. If contractual language is unambiguous, the parties' differing interpretations of the contract do not make it ambiguous. *See Riverside S. Plan.,* 60 A.D.3d at 67, 869 N.Y.S.2d at 511 (citing *Bethlehem Steel Co. v. Turner Constr. Co.*, 2 N.Y.2d 456, 460 (1957); *Moore v. Kopel*, 237 A.D.2d 124, 125 (1st Dep't 1997)).

Furthermore, a court may not, in the guise of interpreting a contract, add or excise terms or distort the meaning of those used to make a new contract for the parties. *Teichman by Teichman v. Community Hosp. of W. Suffolk*, 87 N.Y.2d 514, 520, 663 N.E.2d 628, 630 (1996); *Morlee Sales Corp. v. Mfrs. Trust Co.*, 9 N.Y.2d 16, 19, 172 N.E.2d 280, 282 (1961); *Riverside S. Plan. Corp.*, 60 A.D.3d at 66, 869 N.Y.S.2d at 511. "[W]here a contract was negotiated between sophisticated, counseled business people negotiating at arm's length, courts should be especially reluctant to interpret an agreement as impliedly stating something which the parties specifically did not include." *Donohue*, 38 N.Y.3d at 12, 184 N.E.3d at 866 (quoting *2138747 Ontario, Inc. v. Samsung C & T Corp.*, 31 N.Y.3d 372, 381, 103 N.E.3d 774 (2018))

## II. DEFENDANT-APPELLANT WAS ENTITLED TO REFUSE TO SELL DECEDENT'S COMMON SHARES TO THE CORPORATION

The Agreement is susceptible to one meaning, namely that the Corporation had an obligation to purchase the Decedent's shares, but the Decedent was under no

obligation to sell them. If Decedent refused the Corporation's offer, then it could retain ownership of the shares or sell them to a third party. Plaintiff-Appellee's interpretation of the Agreement imposes additional restrictions or duties on the parties that were not expressed or intended to be expressed in the Agreement.

NRS's argument that the Agreement restricts the holding of common shares by any non-NRS employee only tells part of the story, as the unambiguous text of Section 2 contemplates scenarios in which a non-employee of NRS could hold common shares in the Corporation. There are no recitals in the Agreement stating an intent otherwise. While the District Court relied upon a law review article in holding that Section 2 is intended to "prevent the disposition of the decedent's stock to outside interests or entities, as well as to clarify the value of and means for the disposition of any stock in a closely-held corporation," (A-42, p. 11) that article discusses two reasons for such a provision. *See* Douglas A. Kahn, *Mandatory Buy-Out Agreements for Stock of Closely-Held Corporations*, 68 MICH. L. REV. 1, 2–3 (1969). The other reason is to provide flexibility for the estates of decedents who may require financial liquidity. (*Id*. at p. 3). The District Court provided no explanation for why only the former applies here – and the Agreement is silent on this point.

Citing *A. Cappione Inc. v. Cappione*, 119 A.D.3d 1121, 1122-23, 990 N.Y.S.2d 297, 299-300 (3d Dep't. 2014), the District Court concluded that the "clear

purpose" and "aim" of the Agreement was "to prevent the disposition of the decedent's share to outside interests or entities." (A-42, p. 11) But the agreement in *Cappione* – unlike the one here – had specific language setting forth the purpose of that buy-out agreement, which supported the conclusion in that case.[3] Such provisions or recitals are lacking here.[4]

Section 2 of the Agreement specifies that "the provisions of this Agreement shall govern . . . the ownership by his estate of shares of stock in the event of his death." (A-28). Section 2A adds that "[u]pon the death of any Shareholder, the Corporation shall have the obligation to purchase all of the decedent's shares as soon thereafter as is practicable. (*Id*.) The purchase price shall be the Book Value of the shares as of the end of the fiscal year completed prior to the date of the shareholder's death . . . ." (*Id*.)

---

[3] The court recognized that that agreement expressly stated that the purpose of the provision was to further "[t]he shareholders['] desire to establish a market value for their shares, to effectively control the management of the company, for their mutual best interests, and to protect against divisive relationships which would arise if outsiders with incompatible management philosophies gained interests in the company." The agreement further recognized that "[t]he company is dependent upon and derives substantial benefit from the continued active interest and participation of those shareholders who participate in the management of the company." *See Cappione*, 119 A.D.3d at 1123, 990 N.Y.S.2d at 300.

[4] The District Court also relied on *Gallagher v. Lambert*, 549 N.E.2d 136 (1989) for the proposition that buy-back provisions are intended to ensure control of a corporation remains with its owner-employees. However, that case is distinguishable as it involved a breach of fiduciary duty claim brought by a terminated at-will employee.

Here, the Agreement expressly affirms that the Corporation has an obligation to purchase the Decedent's shares, but it does not require the legal representative of the Decedent to sell them. In practical terms, this means if the Corporation attempts to purchase the shares by offering to pay the contractually established Purchase Price but fails to conclude the transaction for external reasons – such as a refusal to sell by the Decedent's legal representative – then it is free of liability. Section 2A of the Agreement confirms this interpretation:

> If a deceased shareholder's shares are not purchased by the Corporation (or other shareholders) within one year from the date of death, the legal representatives and/or beneficiaries or heirs shall have the right to sell such shares, but the Corporation's obligation to purchase such shares shall continue in effect until such shares are sold, at which time its obligation shall expire without liability of any kind to the Corporation.

(*Id*.) In fact, the Agreement foresees the possibility that the Corporation will fail to purchase the shares and allows the Decedent's legal representative to continue to own, assign, sell or pledge them:

> No Shareholder (or legal representative) in restricted categories A, B or C below shall be permitted to continue to own or to assign, sell or pledge his shares of Common Stock unless with respect thereto the Corporation or other Shareholders fail to purchase such shares of Common Stock pursuant to this Agreement.

(*Id*.)

Plaintiff-Appellee's interpretation – i.e., that Defendant-Appellant was required to sell the Decedent's shares to the Corporation – does not find any support in the language of the Agreement. Nowhere in the Agreement do the parties place

14

on Decedent's legal representative an obligation to sell the shares. Given that the Agreement was negotiated and concluded between sophisticated, counseled business people negotiating at arm's length, the District Court erred by distorting its language to create an obligation that the parties never included nor meant to include.

And, as further evidence that the Agreement contemplated non-employees owning shares, Section 2(A) ends with the following provision: "The person or persons to whom such shares are assigned, sold or pledged shall execute an instrument substantially in the form of Exhibit A hereto . . . ." (*Id.*)

## **CONCLUSION**

For all of the foregoing reasons, this Court should reverse the District Court's February 16, 2024 Order and grant Defendant-Appellant's motion for judgment on the pleadings, holding that: (1) Defendant-Appellant is not required to sell Decedent's shares to the Corporation for Book Value; (2) Defendant-Appellant continues to own the Decedent's shares; and (3) Defendant-Appellant may sell Decedent's shares to third parties.

By: /s/ Charles E. Dorkey III

Charles E. Dorkey III
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 768-6700
Fax: (212) 768-6800

*Attorneys for Defendant-Appellant*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Second Circuit Local Rule 32.1(a)(4)(A) because it contains 2,691 words (based on the Microsoft Word word-count function), excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) because it has been prepared in a proportionately spaced typeface using Microsoft Word in Times New Roman, 14-point type, and according to the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

By: /s/ Charles E. Dorkey III
    Charles E. Dorkey III
    DENTONS US LLP
    1221 Avenue of the Americas
    New York, New York 10020
    Tel.: (212) 768-6700
    Fax: (212) 768-6800

    *Attorneys for Defendant-Appellant*